Mark D. Alexander (MA 0453)
Nicholas E.O. Gaglio (NG 3882)
AXINN, VELTROP & HARKRIDER LLP
1370 Avenue of the Americas
New York, New York 10019
(212) 728-2200

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| INEOS AMERICAS LLC and INEOS OXIDE LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| THE DOW CHEMICAL COMPANY, | ) ) | _____ (__) |
| Defendant. | ) ) ) | |

RECEIVED
SEP 18 2006
.... N.Y.
CASHIERS

INEOS Americas LLC and INEOS Oxide Limited (collectively hereinafter and

incorporating their predecessors and successors in interest, "INEOS"), by their undersigned

counsel, allege upon knowledge as to their own actions, and upon information and belief as to all

other matters, as follows:

## NATURE OF ACTION

1. This action is brought by INEOS for redress of Defendant The Dow Chemical

Company's ("Dow") failure to allow INEOS to participate in capacity expansions at Dow's

Plaquemine, Louisiana ethylene oxide ("EO") plant as expressly required by a 35-year supply

contract between INEOS and Dow. Such participation is critical to keeping the ethanolamines

("EOA") business of INEOS vibrant and competitive in accordance with the demands of the

Federal Trade Commission ("FTC"), which in 2001 ordered Dow to divest the EOA business now owned by INEOS in order to remedy Dow's antitrust violations.

2. INEOS manufactures specialty and intermediate chemicals based on ethylene-derived petrochemicals, among other products. INEOS operates a specialty chemicals manufacturing plant in Plaquemine, Louisiana that produces EOA. The principal feedstock in EOA production is EO.

3. Dow, a major manufacturer of chemicals and plastics, is the largest producer of EO and EOA in the United States and the world.

4. Pursuant to a supply agreement (hereinafter, the "Supply Agreement"), which resulted from a FTC consent decree, Dow is contractually obligated to supply INEOS with a critical amount of feedstock EO, as well as afford INEOS the opportunity to share in any expansion of Dow's EO production capacity. By failing to fulfill this obligation, as described below, Dow materially breached the Supply Agreement, which directly damaged INEOS's ability to expand its EOA production.

5. Accordingly, INEOS seeks damages of at least $60 million, specific performance and injunctive relief requiring Dow to share the increased capacity of Dow's Plaquemine EO plant and to allow INEOS to participate in all future expansions of Dow's EO production.

## PARTIES

6. Plaintiff INEOS Americas LLC is a limited liability company organized under the laws of the State of Alabama with its principal place of business at 2901 Wilcrest Drive, Suite 205, Houston, Texas. INEOS Americas LLC is the successor in interest to Ineos LLC, a signatory to the Supply Agreement.

2

7. Plaintiff INEOS Oxide Limited is a corporation organized under the laws of England and Wales with its principal place of business at Hawkslease, Chapel Lane, Lyndhurst, Hampshire in the United Kingdom. INEOS Oxide Limited (formerly known as INEOS plc) is a signatory to the Supply Agreement.

8. Defendant The Dow Chemical Company is a corporation organized under the laws of the State of Delaware with its principal place of business at 2030 Dow Center, Midland, Michigan.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Dow is subject to personal jurisdiction based upon sufficient minimum contacts. Furthermore, Dow has consented to personal jurisdiction in this district and to venue in this Court in Article 26 of the Supply Agreement, as amended.

## BACKGROUND

11. EO is the principal feedstock in the production of several intermediate and specialty chemicals, including EOA. EO is highly reactive, flammable and toxic, which makes it both expensive and challenging to transport. As a result, EO producers tend to either use their EO for captive production or to sell it to third parties located close to their plants.

12. EOA is produced by reacting EO with ammonia to yield a mixture of three homologous compounds, which can be then separated into three common EOA products, Monoethanolamine ("MEA,") Diethanolamine ("DEA") and Triethanolamine ("TEA.") These

3

products are, in turn, sold to customers and then used as raw materials to manufacture agrochemicals, surfactants, cement additives, gas treatments, textile chemicals, pigments and other products.

13. On March 15, 2001, the Federal Trade Commission issued a Complaint and Decision and Order in the Matter of The Dow Chemical Company and Union Carbide Corporation ("UCC"), finding that Dow's merger with UCC would have reduced competition in the EOA market in violation of Section 7 of the Clayton Act and Section 5 of the FTC Act, and setting forth the steps necessary to remedy this violation in order to approve the Dow merger with UCC (the order shall hereinafter be referred to as the "Consent Decree").

14. Specifically, in its related complaint, the FTC found that there were no economic substitutes for EOA as chemical intermediates. The FTC found that this relevant EOA market in North America was highly concentrated and characterized by high barriers to entry. The complaint alleged that the Dow/UCC merger would substantially increase the likelihood of both coordinated pricing behavior among EOA producers and the unilateral exercise of market power by Dow in the EOA market, further increase barriers to entry in the EOA market, and increase the price of EOA that North American consumers would have to pay.

15. Paragraph III of the Consent Decree required Dow and UCC to divest to INEOS certain components of Dow's EOA business, which essentially consisted of Dow's Plaquemine, Louisiana EOA production facility and related know-how, customer information and other intellectual property. The Consent Decree also required Dow to enter into a long-term supply contract to provide EO to INEOS, and also to provide certain services, utilities and real estate rights to INEOS.

4

16. The express purpose of the divestiture requirement with respect to Dow's EOA assets, as stated in paragraph III.C, was "to ensure the continued operation of the Dow Global Ethanolamines Business in the same business in which the assets and businesses of the Dow Global Ethanolamines Business are engaged at the time of the Acquisition, and to remedy the lessening of competition resulting from the Acquisition as alleged in the Commission's complaint."

17. Prior to entry of the final Consent Decree, Dow and INEOS (INEOS Americas LLC through a predecessor company, Ineos L.L.C.) had entered into an asset purchase agreement (the "Ineos Agreement"), calling for the sale of Dow's EOA assets that the Consent Decree ultimately required to be divested.

18. Paragraph III.H of the Consent Decree explicitly incorporated by reference the terms of the Ineos Agreement, and stated that "any failure by Respondents [Dow and UCC] to comply with the Ineos Agreement or the New Ethanolamines Divestiture Agreement shall constitute a failure to comply with this Order."

19. Pursuant to the Ineos Agreement, INEOS acquired the EOA business of Dow on February 12, 2001.

20. In determining the appropriate scope of the divestiture, an important element for both the FTC and INEOS was to include sufficient divestiture assets – including a robust supply of EO for existing needs and to facilitate future growth – to allow INEOS to operate as a viable long-term competitor in an expanding EOA market. EO supply was particularly important because EO is difficult to transport, making pipeline access to production from Dow's EO plant at Plaquemine adjacent to the divested EOA plant a critical component of the divestiture. The divested EOA plant was the primary outlet for EO from the Dow EO plant in Plaquemine.

21. As an accompaniment to the Ineos Agreement, and as required by the Consent

Decree, Dow and INEOS entered into the Supply Agreement on July 31, 2000, which they

subsequently amended on October 26, 2001, and again on December 10, 2004. The term of the

Supply Agreement is 35 years and may only be terminated in accordance with Article 17 of the

Supply Agreement.

22. All conditions precedent relating to the Supply Agreement were performed.

23. The Supply Agreement is a valid long-term supply contract for the sale of goods and

has not been terminated.

24. INEOS has complied with and fulfilled all its obligations under the Supply

Agreement.

25. The "Effective Date" of the Supply Agreement is Feb 12, 2001.

26. The purpose of the Supply Agreement, as stated in Article 2.1, "is for Customer

[INEOS] to obtain from Supplier [Dow] and Supplier to supply to Customer such quantities of

EO as are necessary to satisfy Customer's requirements."

27. Under the terms of the Supply Agreement, Dow agreed to supply INEOS's

requirements of EO, up to a stipulated maximum amount. INEOS expanded its EOA plant's

capacity in October 2003 and was consuming the maximum amount of EO stipulated in the

Supply Agreement.

28. Article 5.1(e) of the Supply Agreement states, in relevant part:

If at any time after the eighteenth month after the Effective Date Supplier
proposes any expansion of the capacity of the EO Plant [defined as Dow's EO
manufacturing plant in Plaquemine, Louisiana], it shall inform Customer before
implementing such proposal and shall offer Customer the opportunity to
participate in the cost of financing such expansion. If Customer accepts such
opportunity and participates in the financing, the additional EO capacity which
represents Customer's pro rata share (based upon its share of the financing cost)
of such expansion shall be reserved for supply to Customer at a price which

6

represents the Cash Cost [defined as "Supplier's actual cash costs per lb. to produce such EO, which the Parties expressly agree excludes any depreciation or amortization cost or financing costs or charges" but takes into account the market price of ethylene] of such EO.

29. Article 5.1(e) was included in the Supply Agreement in order to ensure that INEOS would maintain its competitive viability by being able to expand production in order to respond to growing demand for EOA.

30. In negotiating the EOA divestiture package, the parties discussed at length the volume of EO INEOS would require to maintain its market share over time. The EO volume commitments proposed by Dow were sufficient only to allow INEOS to maintain its market share for a three-to-four year period, which would be insufficient to preserve competition over the 35-year life of the Supply Agreement. As Dow was unwilling to provide incremental EO to INEOS that would enable INEOS to maintain its market share after the initial three-to-four year period, INEOS proposed that Article 5.1(e) be included to allow its EOA business to grow as Dow expanded the capacity of its Plaquemine EO plant.

31. The FTC considered requiring Dow to divest its EO plant at Plaquemine as part of the EOA divestiture, but was persuaded by Dow that the Supply Agreement, and particularly Article 5.1(e) in the event Dow expanded its capacity, would be sufficient to assure INEOS of having a supply of EO adequate to meet its current and future needs.

## FACTUAL ALLEGATIONS

32. Dow expanded the production capacity of the EO Plant (which herein has the same definition as in the Supply Agreement) after the eighteenth month after the Effective Date of the Supply Agreement (i.e. after August 12, 2002).

33. For example, in August 2004, Dow, through its associate general counsel Graham Taylor, told Bill Reid, then CEO of INEOS Oxide (a division of INEOS Americas LLC), that

7

Dow implemented an EO capacity expansion of 200 million pounds annually at the EO Plant in or around May 2003.

34. Additionally, in February 2005 Dow, through Earl Shipp, Business Vice President of Dow Oxides & Glycols, told INEOS that Dow increased capacity at the EO Plant by at least 89 million pounds annually.

35. Article 29 of the Supply Agreement allows either party to the agreement to audit the books and records of the other party for the preceding three years. Pursuant to this clause, INEOS arranged for an audit of the EO Plant's output to be conducted by KPMG, which was completed on July 11, 2006. KPMG's audit revealed that the capacity of the EO Plant increased since August 12, 2002 by at least 70.7-109.5 million pounds.

36. Dow did not offer INEOS the opportunity to participate in any expansion of the EO Plant pursuant to the Supply Agreement.

37. If Dow had offered INEOS the opportunity to participate in the expansion of the EO Plant, INEOS would have participated in the expansion up to the full amount of such EO expansion.

38. As a direct result of Dow's breach of the Supply Agreement, INEOS was damaged by (1) not being able to purchase additional EO at Cash Cost (as defined in the Supply Agreement), which is lower than prevailing market prices; (2) losing the additional profits that INEOS would have earned by selling additional EOA produced as a result of the additional EO resulting from the expansion of the EO Plant; and (3) suffering harm to its reputation as a substantial and reliable EOA supplier due to INEOS's inability to expand to meet the needs of its customers.

39. EO from Dow's EO Plant is uniquely necessary for INEOS's EOA production. INEOS could not adequately source its requirements for EO from plants other than Dow's EO

8

Plant in Plaquemine. EO's high reactivity, flammability and toxicity render EO from remote sources more expensive and logistically more challenging to obtain. The EO manufacturing process is both complicated and costly, greatly limiting the number of domestic producers. EO is subject to sudden supply/demand changes, making supply from third parties commercially impracticable. As a result, EO from sources other than the adjacent EO Plant are not adequate substitutes to fulfill INEOS's requirements.

## CLAIM FOR RELIEF

40. Plaintiffs repeat and allege paragraphs 1-39 of this Complaint as if restated in full.

41. Dow breached the Supply Agreement by expanding the EO Plant and failing to afford INEOS the opportunity to participate in any expansion.

42. As a direct and proximate result of the foregoing, INEOS was damaged in an amount not less than $60 million, plus applicable interest, costs and attorney's fees.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs respectfully request that this Court:

      i)     Adjudge and declare that Defendant materially breached the Supply Agreement;

      ii)    Award Plaintiffs all appropriate monetary damages stemming from Defendant's breach, in an amount of not less than $60 million;

      iii)   Grant Plaintiffs injunctive relief by requiring Defendant to afford Plaintiffs the opportunity to participate in all future expansions of the EO Plant during the term of the Supply Agreement and any successor agreements;

      iv)   Grant Plaintiffs injunctive relief and specific performance by requiring Defendant to provide Plaintiffs with an appropriate share of all previous

9

capacity expansions on a going forward basis, and in an amount equal to

the full capacity expansion made by Dow in breach of the EO Supply

Agreement;

v)    Award Plaintiffs costs of the suit and reasonable attorneys' fees, and such

other and further relief to which Plaintiffs may be justly entitled.

DATED:    New York, New York
          September 18, 2006

                              AXINN, VELTROP &HARKRIDER LLP

                              By:

                                  James D. Veltrop (DV 6325)
                                  90 State House Square
                                  Hartford, CT  06103-3702
                                  (860) 275-8100

                                  Mark D. Alexander (MA 0453)
                                  Nicholas E.O. Gaglio (NG 3882)
                                  1370 Avenue of the Americas
                                  New York, NY 10019-4602
                                  (212) 728-2200

                                  *Attorneys for Plaintiffs*

10